STATE ex rel. JACOBSEN, Respondent v. HANSEN et al., Appellants

(68 N. W.2d 480)

(File No. 9448. Opinion filed February 2, 1955)

**J. L. Hannett,** States Atty. of Tripp County, **D. G. Grieves,** Winner, **G. F. Johnson,** Gregory, **M. Q. Sharpe,** Kennebec, for Defendants and Appellants.

**Parnell J. Donahue,** Bonesteel, **Lund & McCann,** Brookings, for Plaintiff and Respondent.

ROBERTS, J. Plaintiff applied to the circuit court for a writ of prohibition to restrain the defendant board of county commissioners from purchasing the Rosebud Community Hospital at Winner with proceeds from the sale of bonds. After hearing, the court sustained the claim that defendant board was acting in excess of authority conferred by statute and entered a decree accordingly. Defendants have appealed.

There is no dispute in the controlling facts. On October 14, 1952, there was presented to the board of county commissioners of Tripp County a petition signed by the required number of electors of the county who were named as owners of real property therein which asked that a county hospital be established and that bonds in the amount of $120,000 be issued. The county board adopted a resolution calling a special election to submit to the electors of the county the questions of establishing a county hospital and of issuing bonds "for the purpose of procuring, establishing and maintaining" the same. It appears that the questions as stated in the resolution were submitted to the electors at the election held on November 4, 1952, and that a majority of the

votes cast was in favor of establishing a hospital and of issuing bonds. The county board offered to purchase at a receivership sale the Rosebud Community Hospital and its equipment and supplies for $116,000 and the offer was accepted. Before the bonds were in fact issued and the transaction completed, the present action was instituted.

■ ■ A county in this state is a creature of statute and has no inherent authority. It has only such powers as are expressly conferred upon it by statute and such as may be reasonably implied from those expressly granted. Pearson v. Johnson, 59 S.D. 163, 238 N.W. 644; South Dakota Employers Protective Ass'n v. Poage, 65 S.D. 198, 272 N.W. 806; State ex rel. Bell v. Board of County Commissioners of Beadle County, 68 S.D. 237, 300 N.W. 832. As the representative of the county having general control over its property and the management of its business and fiscal affairs, SDC 12.0617, the county board can exercise authority in these respects only in so far as statutes confer power upon the county.

Defendant board contends that under the provisions of SDC 27.1901 authorizing a county to "establish and maintain a county hospital" and to issue bonds "for the purpose of purchasing a site for such hospital and for the erection, equipment, and maintenance thereof" it may purchase a hospital already constructed and use the proceeds from the sale of bonds for its payment; that the authority to "establish and maintain" confers power to do anything necessary to provide a county with a hospital either by purchasing a site with a hospital as a part of it or otherwise acquiring a site and erecting a hospital. Plaintiff contends that a county may not issue bonds the proceeds of which are to be used for the purchase of a hospital already in existence; that the statute was enacted to enable a county not having adequate hospital facilities to obtain them by acquiring a site and building a new hospital.

It is necessary to an understanding of the contentions of the parties to have in mind the origin and history of certain portions of the statute relating to county hospitals. The statute, SDC 27.19, had its origin in Chap. 265, Laws 1909.

By this statute, any county having the required population was authorized to "establish and maintain a county hospital". This statute amended by Chap. 110, Laws 1911, became Section 7694, R.C. 1919. This section was amended by Chap. 282, Laws 1919, and the legislature for the first time undertook specifically to authorize the issuance of bonds to provide for county hospitals and to enact comprehensive provisions for their control and management. This amendment provided that bonds could be issued "for the purpose of purchasing a site for such hospital and for the erection, equipment and maintenance thereof". The section referred to was again amended by Chap. 247, Laws 1923, but this amendment is immaterial to a decision herein. An amendment made by Chap. 210, Laws 1929, broadened the powers of the board of county commissioners. The legislature added to Section 7694, supra, sections 14 to 17, both inclusive. "The first of these subsections read in part as follows: "the board of county commissioners may provide for a sinking fund and may levy a tax to provide for a sinking fund from year to year * * * for the purpose of purchasing a site, erecting a hospital and equipping the same, and that when a sufficient amount has been raised for such purpose, the board may dispense with the issuance of bonds and may call a special election or submit the question at a general election as to whether or not a county hospital shall be **purchased or erected** and equipped for the purposes and under the conditions hereinbefore mentioned, and in such case the question of the issuance of bonds shall not be submitted to the electors of the county." Section 14 with the elimination of reference to submission of the question "whether or not a county hospital shall be purchased or erected" was substantially carried forward into the South Dakota Code of 1939 as Section 27.-1903. The other amendments, Chap. 110, Laws 1945 and Chap. 133, Laws 1951, are not here pertinent.

The original act as stated authorized a county to "establish and maintain a county hospital" and made no reference to the purchasing of a site or the erection of a hospital building. Defendants contend in effect that such statute was sufficiently broad and comprehensive to authorize the purchase of property on which there was a hospital already

erected or to acquire a site and erect and equip a hospital; that amendatory provisions do not indicate an intention to alter, amend or repeal the methods for the acquisition of property for a hospital. It is argued that the power so initially reflected in the statute was not lost when the provisions of Chap. 210, Laws 1929, above quoted, were omitted from the 1939 Code; that the revision merely eliminated the necessity of an election to vote upon the question whether or not a county hospital be purchased or erected by the use of money accumulated in the sinking fund in lieu of issuing bonds; and that the legislature could not have reasonably intended to permit the use of money accumulated in a sinking fund for the purchase of a hospital already erected and to exclude such right by expending the proceeds from the sale of bonds.

■ The question to be determined is the extent of the powers conferred. It is whether the statute is broad enough to authorize defendant board to issue bonds and to apply the proceeds of their sale to the acquisition of a hospital already constructed. The grant of power to issue bonds for specified purposes excludes the possibility of an implication of power to issue bonds for other purposes, although the county or other governmental subdivision may have power to effect such other purpose. So is was held in Grabe v. Lamro Independent Consolidated School Dist., 53 S.D. 579, 221 N.W. 697, 698, in construing a statute conferring authority to issue bonds " 'to raise money for the purpose of a site or sites and the erection of suitable buildings for school purposes' "; that the statute did not embrace authority for the issuance of bonds for equipping or furnishing a schoolhouse, notwithstanding the power of the school district to equip or furnish its buildings from current revenue.

■ We have examined Morgan v. Fayette County Board of Education, 294 Ky. 597, 172 S.W.2d 64, 67, and other authorities cited by defendants in support of their contention that the primary purpose of the statute is to authorize the establishment of county hospitals including their acquisition by purchase and to grant authority to borrow money to defray the cost of their purchase or erection. It was said in the case cited that "the word 'establish' is apt in

the sense of to create or originate in some way other than to build or erect". The statute under consideration too confers authority to "establish" and if it granted power to issue bonds for the purpose of establishing county hospitals, those cases would have application. The statute under consideration grants power to issue bonds for certain specified purposes. It grants power as we have stated to issue the bonds of the county for the purposes of "purchasing a site" and for the "erection, equipment, and maintenance" of a county hospital. The legislature has confined the authority conferred to a specific and clearly indicated purpose or purposes and defendant board has no authority to issue bonds and expend the proceeds thereof for the accomplishment of a different purpose outside and beyond such limitations, namely, the purchase of a hospital already constructed.

■ Defendants contend that Chapter 489, Laws 1953, has validated all proceedings heretofore taken for the issuance of bonds and the purchase of the hospital. This curative act applies in all cases where a county or other political subdivision "has issued bonds or has heretofore commenced proceedings to issue bonds for any lawful purpose". The act further provides: "In all such cases the bonds so issued and all proceedings heretofore taken for the issuance of such bonds and for the levy and appropriation of taxes, assessments, or revenues for the payment thereof and all covenants heretofore made for the security of such bonds are hereby declared to be valid and legal, notwithstanding any defect or irregularity, other than constitutional defects, in any of said bonds and notwithstanding any defect, irregularity or unauthorized actions in such proceedings, including, but without limitation of the generality hereof, any defect or irregularity in any election or petition required by law or in the qualification of the officers selling, executing and delivering such bonds; and all such bonds hereafter issued, when and as they are issued pursuant to said proceedings heretofore taken, shall be legal, valid and binding obligations of the political subdivision issuing the same, notwithstanding any defects, irregularities, omissions or unauthorized actions, other than constitutional defects, in the proceedings taken for the issuance of such bonds". This case presents a ques-

tion not unlike that in Isaacson v. Parker, 42 S.D. 562, 176 N.W. 653, 656, wherein this court referring to a curative statute said: "It sought to cure errors and defects under powers granted, not to supply new and hitherto ungranted powers." We conclude that the proposed issuance of bonds for a purpose not heretofore authorized is not validated by the 1953 Act.

The judgment appealed from is affirmed.

All the Judges concur.